1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRANCE JON IRBY,                    )
                                      )
            Plaintiff,                )        CASE NO.      C06-1836-JCC-MJB
                                      )
      v.                              )
                                      )
SKAGIT COUNTY JAIL, et al.,           )        REPORT & RECOMMENDATION
                                      )
            Defendants.               )
_____)

13            <u>INTRODUCTION</u>

14            Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed an action pursuant to 42 U.S.C. §

15    1983.  He alleges that while he was incarcerated at the Skagit County Jail ("the Jail") in Mount

16    Vernon, Washington, he received inadequate medical care, in violation of the Eighth Amendment to

17    the Constitution.  Plaintiff and defendants have filed motions for summary judgment.  Having

18    considered the briefs, declarations, and exhibits submitted by the parties, the Court concludes that

19    plaintiff's motion for summary judgment should be denied and defendants' motion for summary

20    judgment should be granted.

21            <u>BACKGROUND</u>

22            The declarations submitted by defendants in response to plaintiff's motion for summary

23    judgment, and in support of their own motion for summary judgment, establish the following facts,

24    which, except as noted below, are uncontroverted by plaintiff:

25            Plaintiff was a pretrial detainee at the Jail on the evening of June 6, 2005, when he was

26    mistakenly given medication intended for another inmate.  (Dkt. No. 68, Ex. D at 3).  The Jail guard

REPORT & RECOMMENDATION
PAGE - 1

1  who dispensed the medication, Chris Dormer, realized his mistake and immediately notified his

2  supervisor.  (*Id.*, Ex. B at 1-2).  The supervisor then telephoned Dr. Howard Leibrand, the Jail's

3  physician, at Dr. Leibrand's home.  (*Id.*).  Dr. Leibrand asked what medication had been given to

4  plaintiff and was informed that it was a combination of Ambien, Diphenthydramine, Seroquel,

5  Amitriptyline, and Phentoinal.  (Dkt. No. 86, Declaration of Gary Shand, Ex. A "Jail Incident

6  Report").  In Dr. Leibrand's view, this combination "would have been sedating but did not represent

7  a significant risk to the health of [plaintiff], a 47 year old healthy male."  (Dkt. No. 86, Declaration

8  of Howard Leibrand at 2).  Accordingly, Dr. Leibrand advised the Jail staff to tell plaintiff that he

9  would likely experience a very deep sleep that evening, but there would be no other side effects.  To

10  be safe, Dr. Leibrand directed the Jail staff to check on plaintiff every hour.  (*Id.*)

11  Plaintiff asserts that he woke up during the night to go to the bathroom, became dizzy, and

12  fell down, injuring his right thumb.  (Dkt. No. 61 at 2).  No Jail staff witnessed this accident and

13  plaintiff's support for his account consists only of his own statement and two unsworn statements by

14  other inmates, which defendants contend are inadmissible.  (Dkt. No. 68 at 6-7).

15  In any event, it is undisputed that the next morning, plaintiff reported his injury and was

16  examined by Dr. Leibrand.  Dr. Leibrand concluded that plaintiff "may have sprained his wrist and

17  thumb, or that he may have broken one of the small bones in his hand."  (Dkt. No. 68, Declaration of

18  Howard Leibrand at 2).  Dr. Leibrand ordered x-rays of plaintiff's hand.  (*Id.*)  However, the x-rays

19  "were negative for visible injuries to the bony structure of his neck, arm, wrist, and hand."  (*Id.*)

20  Nor did they reveal any specific injury to the thumb.  (*Id.*)  Accordingly, Dr. Leibrand prescribed

21  anti-inflammatory and analgesic medication for plaintiff but did nothing more.  (*Id.*)

22  Plaintiff continued to report pain in his thumb, and consequently, in August, 2005, Dr.

23  Leibrand arranged for plaintiff to be seen by an orthopedic surgeon, Dr. Richard Gordon, at Skagit

24  Valley Medical Center.  (*Id.* at 3).  Dr. Gordon diagnosed plaintiff with a condition known as

25  "trigger thumb."  (*Id.*)  Dr. Gordon advised against surgery because (1) it was not immediately

26  necessary, and (2) surgery would require a large commitment of resources on the part of Jail staff, in

REPORT & RECOMMENDATION
PAGE - 2

1   order to ensure that plaintiff was properly escorted and monitored during and after the procedure.

2   (Dkt. No. 86, Ex. C at 6).  Furthermore, Dr. Gordon thought that plaintiff "was very much

3   exaggerating the amount of pain and disability" that he was experiencing.  (*Id.*).

4         Plaintiff continued to report that his thumb bothered him.  (Dkt. No. 68, Declaration of

5   Howard Leibrand at 3).  Dr. Leibrand consequently asked David Jones, the Medical Liaison Deputy

6   at the Jail, to contact the Washington Department of Corrections ("DOC") and find out whether it

7   might arrange the surgery.  (*Id.*)  Jones sent an email message in December, 2005, to an official at

8   the DOC describing plaintiff's diagnosis and asking whether DOC might assist "by having the

9   surgery done where appropriate and recovery done at a secure facility[.]"  (Dkt. No. 61, Ex. G).

10   Jones also stated that Dr. Leibrand "is saying that we should have the surgery done."  (*Id.*)

11         Dr. Leibrand denies that he told Jones that he favored surgery.  In his declaration filed in

12   support of defendants's motion for summary judgment, Dr. Leibrand states that Jones's email

13   message "is inaccurate insofar as it reports both myself and Dr. Gordon as saying that surgery

14   'should' be done in the sense of surgery being deemed by either of us as necessary to alleviate any

15   significant pain."  (Dkt. No. 68, Declaration of Howard Leibrand at 3).  Dr. Leibrand states that after

16   having examined plaintiff, seen x-rays of his hand, and heard Dr. Gordon's opinion, he advised Gary

17   Shand, the Chief of Corrections for Skagit County, that plaintiff's condition "would likely benefit

18   more from continuing treatment with anti-inflammatories than any of the alternatives, and surgery

19   was not warranted at that time."  (*Id.* at 4).  According to Dr. Leibrand, trigger finger does not

20   deteriorate into a more serious condition.  (*Id.*)

21         DOC apparently did not offer to provide the surgery for plaintiff's thumb.  In September,

22   2007, after plaintiff had been transferred to DOC custody at the Washington State Penitentiary,

23   plaintiff was examined by DOC medical staff.  He was injected in the hand with a steroid to alleviate

24   his symptoms.  (*Id.*)  The record does not disclose any further treatment

25         On December 26, 2006, plaintiff submitted the instant complaint pursuant to 42 U.S.C.

26   §1983.  (Dkt. No. 1).  The Court twice granted plaintiff leave to amend his complaint to cure

1   deficiencies.  On March 2, 2007, the Court dismissed two defendants and directed the Clerk to serve

2   the complaint on the remaining defendants.  (Dkt. No. 15).  Defendants filed their answer on May 2,

3   2007.  (Dkt. No. 28).

4        The Court issued an Order on June 4, 2007, setting deadlines for discovery and dispositive

5   motions.  (Dkt. No. 37).  On plaintiff's motion, the Court extended these deadlines on July 19, 2007.

6   (Dkt. No. 52).  Plaintiff filed a motion for summary judgment on October 9, 2007.  (Dkt. No. 61).

7   Defendants filed a response (Dkt. No. 68) and then their own motion for summary judgment on

8   December 6, 2007.  (Dkt. No. 86).  Plaintiff filed a response (Dkt. No. 88), defendants filed a reply

9   (Dkt. No. 91), and the parties' summary judgment motions are now ready for review.

10                                              DISCUSSION

11       Summary judgment is proper only where "the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

13   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

14   law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The court

15   must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny &*

16   *Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving

17   party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See*

18   *Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material

19   fact exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg.*

20   *Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  In addition,

21   "[w]hen the nonmoving party relies only upon its own affidavits to oppose summary judgment, it

22   cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."

23   *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

24       As a pretrial detainee, plaintiff's claim of inadequate medical care is governed by Supreme

25   Court decisions interpreting the Eighth Amendment in the prison context.  *See Johnson v. Meltzer*,

26   134 F.3d 1393, 1398 (9th Cir. 1998).  These cases establish that denial of medical attention to

REPORT & RECOMMENDATION
PAGE - 4

1   prisoners constitutes an Eighth Amendment violation only if the denial amounts to *deliberate*

2   *indifference* to serious medical needs of the prisoners. *See Toussaint v. McCarthy*, 801 F.2d 1080,

3   1111 (9th Cir. 1986) (emphasis added).  In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme

4   Court defined a strict standard which a prisoner must meet in order to establish "deliberate

5   indifference."  Mere differences of opinion, negligence or even recklessness concerning the

6   appropriate treatment is insufficient.  511 U.S. at 835-37.  Rather, a prison official is liable only if he

7   knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take

8   reasonable measures to abate it."  *Id.* at 847.  In general, expert opinion is necessary to establish a

9   claim of deliberate indifference.  *See Hutchinson v. United States,* 838 F.2d 390 (9th Cir. 1988)

10          Here, plaintiff simply has not shown that a triable issue of fact exists that would hold

11   defendants liable under this standard.  He has submitted no evidence, other than his own statements,

12   that support his claim that his injury has worsened since the incident.  Defendants, on the other hand,

13   have submitted uncontroverted evidence that plaintiff received medical attention following the injury

14   to his thumb.  It is, of course, regrettable that plaintiff was given the wrong medication by Jail staff,

15   which, accepting plaintiff's statements as true, precipitated his fall and injury.  However, the

16   inadvertent delivery of the wrong medication was at most, under the record presented here, an act of

17   negligence.  As such, it does not rise to the level of a constitutional violation.  *See* 511 U.S. at 835-

18   37.  While the government has an obligation under the Eighth Amendment to provide medical care

19   for those in its custody, not every breach of that duty is of constitutional proportions.  *See Lopez v.*

20   *Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

21          Accordingly, the Court concludes that plaintiff has not satisfied his burden of showing that a

22   genuine issue of material fact exists regarding his claim that defendants provided inadequate medical

23   care.  Plaintiff's additional claim that the Jail failed to properly train its staff, is premised upon an

24   initial finding of inadequate medical care.  Because plaintiff fails to meet his burden regarding this

25   initial finding, his remaining claim also fails.  Consequently, the Court recommends that plaintiff's

26   motion for summary judgment be denied and that defendants' motion for summary judgment be

REPORT & RECOMMENDATION
PAGE - 5

1  granted.

2  <u>CONCLUSION</u>

3  For the foregoing reasons, the Court recommends that plaintiff's motion for summary

4  judgment be denied, that defendants's motion for summary judgment be granted, and that this action

5  be dismissed with prejudice.  A proposed Order accompanies this Report and Recommendation.

6  DATED this 23rd day of January, 2008.

7

8

9  MONICA J. BENTON
   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT & RECOMMENDATION
PAGE - 6